IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Waycross Division

| | | |
|---|---|---|
| IN RE: DEMETRIUS O. DENTON | ) | CHAPTER 13 CASE |
| | ) | NUMBER <u>06-50467</u> |
| Debtor | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| CLYDE W. ROYALS | ) | |
| | ) | **F I L E D** |
| Movant | ) | at 2 O'clock & 00 min. P M |
| | ) | Date June 12, 2007 |
| v. | ) | |
| | ) | Samuel L. Kay, Clerk |
| M. ELAINA MASSEY | ) | United States Bankruptcy Court |
| | ) | Brunswick, Georgia |
| Chapter 13 | ) | |
| Trustee | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before me on the Motion for Contempt ("Motion") filed by Clyde W. Royals, counsel for the Debtor ("Debtor's Counsel"), against M. Elaina Massey, the chapter 13 trustee ("Trustee"). The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

The impetus for the Motion was a series of disbursement errors, acknowledged by the Trustee, that resulted in a shortfall of money available to pay attorney's fees under the Debtor's

chapter 13 plan, so that Debtor's Counsel received no money toward fees in this case for two months in a row.

I dismiss the Motion because the Trustee is shielded from suit by derived judicial immunity. I thus do not reach the merits of the Motion, but I do consider issues the Motion raises.

The first issue is the meaning of "periodic payments . . . in equal monthly amounts" under 11 U.S.C. § 1325(a)(5)(B)(iii)(I). This language encompasses all regularly-recurring post-confirmation payments on allowed secured claims. These payments must be in equal monthly amounts beginning with the Trustee's first disbursement following confirmation.

The second issue is the requirement of adequate protection for secured creditors—-its application pre-confirmation under 11 U.S.C. § 1326(a)(1)(C) and its meaning post-confirmation "during the period of the plan" under 11 U.S.C. § 1325(a)(5)(B)(iii)(II). Adequate protection payments pre-confirmation are applied to principal only. Adequate protection post-confirmation is provided at least in part by payment in full of the allowed secured claim over the life of the plan at an interest rate that provides the creditor the value of the allowed secured claim as of the date of the filing of the petition.

AO 72A
(Rev. 8/82)

In addition, I address the related issue of the accrual and payment of interest required for a creditor to receive present value on allowed secured claims. This interest begins to accrue at the date of confirmation. Moreover, the interest that accrues over the amortization period must be paid in arrears, so that a disbursement to a secured creditor properly includes only the interest that accrued on the claim during the immediately-preceding month, not the interest that will accrue in the coming month.

## I. Motion for Contempt

Debtor's Counsel alleges that the Trustee's disbursements violate the General Order that establishes the distribution scheme for attorney's fees to counsel representing chapter 13 debtors.[1] Debtor's Counsel also alleges that the Trustee's disbursements conflict with the provisions of the Debtor's confirmed chapter 13 plan ("Plan") and that the Trustee has failed to execute her duties under 11 U.S.C. § 1326.[2] Debtor's

---

[1] General Order Number 2005-6, dated October 27, 2005, available at http://www.gas.uscourts.gov/usbc/gen_order2005-6.pdf. Since the filing of this Motion, General Order 2005-6 has been vacated and superseded by General Order 2007-6, dated March 1, 2007, available at http://www.gas.uscourts.gov/usbc/go2007-6.pdf.

[2] Section 1326 requires the Trustee to "distribute any such payment [by the debtor] in accordance with the [confirmed] plan as soon as practicable," 11 U.S.C. § 1326(a)(2), and to pay administrative expenses including attorney's fees before or at the same time as each payment to creditors, § 1326(b)(1).

Counsel does not seek damages for the alleged contempt, but rather requests entry of an order directing the Trustee to correct the payments according to the Plan in this case and to continue to disburse correctly in this case as well as all others administered by the Trustee.

I first note that because Debtor's Counsel does not seek money damages, he should more appropriately have requested an affirmative or mandatory injunction requiring the Trustee to perform certain acts instead of seeking an order holding the Trustee in contempt. However, the type of relief sought is a distinction without a difference, because the Trustee is immune both from damages and from injunctive relief for the disbursement errors at issue here.

Just as judges are absolutely immune from suit in the exercise of their judicial authority, so also are non-judicial officers absolutely immune when they exercise discretionary judgments that are functionally comparable to those of judges. Antoine v. Byers & Anderson, 508 U.S. 429, 436 (1993). This derived judicial immunity is not limited to actions for damages, but also extends to requests for injunctive relief. Mullis v. U.S. Bankr. Ct., 828 F.2d 1385, 1394 (9th Cir. 1987). "[A]bsolute immunity bars a suit at the outset and frees the defendant

official of any obligation to justify his actions." <u>Gray v. Bell</u>, 712 F.2d 490, 495-96 (D.C. Cir. 1983).

     Here, the Trustee's disbursement errors occurred during her administration of the estate under the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The Trustee inadvertently overpaid secured creditors when she attempted to conform her computerized disbursement calculations in this case to the Plan and to the BAPCPA disbursement scheme set out in an order entered in another case.[3] Because of the overpayments, no money was disbursed for attorney's fees for a period of two months.

     The Trustee's exercise of discretionary judgment in attempting to reconcile conflicting disbursement schemes with the debtor's Plan is functionally comparable to the discretion exercised by judges. The Trustee thus cannot be sued for her disbursement errors.

## II. Payments in Equal Monthly Amounts on Secured Claims

     The Motion, although itself ill-conceived, has as its backdrop the legitimate question of how chapter 13 plans can be

---

[3] <u>In re Mojica</u>, Ch. 13 Case No. 06-20273 (Bankr. S.D. Ga. filed 5/1/2006)(Order on Motion for Relief from Stay, vacated by Consent Order on Motion to Reconsider).

structured under BAPCPA to ensure that money is available to pay the debtor's lawyer. I do not answer this question, because it is not before me. However, in addressing the disbursement errors made by the Trustee, I do foreclose an answer that other courts have endorsed.

The BAPCPA amendments to the Bankruptcy Code reduce the ready availability of funds to pay attorney's fees in at least two ways. First, BAPCPA requires a confirmation hearing within 45 days after the event commonly referred to as the "341 meeting." See 11 U.S.C. § 1324(b).[4] Second, BAPCPA requires that the plan provide for "periodic payments . . . in equal monthly amounts" to secured creditors. See 11 U.S.C. § 1325(a)(5)(B)(iii)(I).[5]

By telescoping the time between the petition and the confirmation hearing, § 1324(b) not only hastens the start of payment distributions to creditors under the plan, but also reduces the amount of pre-confirmation money available to pay administrative expenses, including attorney's fees, in districts that previously delayed confirmation until after the claims bar

---

[4] Section 1324(b) provides in pertinent part that "[t]he hearing on confirmation of the plan may be held not earlier than 20 days and not later than 45 days after the date of the meeting of creditors under section 341(a)."

[5] Section 1325(a)(5)(B)(iii)(I) provides in pertinent part that "if property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts."

date.[6] Post-confirmation, § 1325(a)(5)(B)(iii)(I) reduces the amount of money for attorney's fees by locking in a fixed monthly payment on every allowed secured claim.

Other courts have attempted to solve the attorney's fee problem by a tortured interpretation of § 1325(a)(5)(B)(iii). These courts have found money for post-confirmation payment of attorney's fees in the difference between the monthly amount of payments provided to the secured creditor under the plan and the monthly amount of payments characterized as "adequate protection payments." See In re DeSardi, 340 B.R. 790 (Bankr. S.D. Tex. 2006). See also In re Hill, 2007 WL 499622 (Bankr. M.D.N.C. 2007); In re Blevins, 2006 WL 2724153 (Bankr. E.D. Cal. 2006). These courts have held that the Code does not require plan payments on allowed secured claims to begin at confirmation, but rather that adequate protection payments required pre-confirmation under 11 U.S.C. § 1326(a)(1)(C) continue post-confirmation until attorney's fees are paid in full. See, e.g., DeSardi, 340 B.R. at 808 ("[A]mounts payable to a car lender in excess of the amount of adequate protection may not be paid until

---

[6] Regardless of when the confirmation hearing is held, § 1325(a)(2) still requires that the debtor pay all court costs, i.e., the filing fee, before a plan may be confirmed; and Rule 1006(b) of the Federal Rules of Bankruptcy Procedure still authorizes payment of the filing fee in installments for up to 180 days. Pre-confirmation payments accumulated by the chapter 13 trustee over this 180-day period are available to pay attorney's fees and other administrative expenses.

all § 507(a)(2) payments [including attorney's fees] have been made.") I disagree with this approach for three reasons.

First, these courts appear to treat "periodic payments" in § 1325(a)(5)(B)(iii)(I) as a defined term meaning "payments on an amortized debt," thus creating and artificially distinguishing a counterpart to "adequate protection payments," which bankruptcy practitioners have long understood as a term of art. Nothing in the Code supports this interpretation of "periodic payments."

The word "periodic" simply describes payments that recur at regular intervals. Thus "periodic payments" in § 1325(a)(5)(B)(iii)(I) refers without distinction to *all* regularly-recurring post-confirmation payments on an allowed secured claim. The provision in § 1325(a)(5)(B)(iii)(I) that "such payments shall be in equal monthly amounts" means that *all* regularly-recurring post-confirmation payments on an allowed secured claim must be in equal monthly amounts.

It follows that pre-confirmation adequate protection payments may not be extended beyond the date of confirmation when the monthly amount of the adequate protection payment is less than the monthly amount of payment on the allowed secured claim under the plan. This scenario, in which post-confirmation payments characterized as "adequate protection payments" are less

⬥AO 72A
(Rev. 8/82)

than post-confirmation payments characterized as "periodic payments," is precisely the "solution" to the problem of attorney's fees endorsed in <u>DeSardi</u>, <u>Hill</u>, and <u>Blevins</u>. Because all periodic payments to a secured creditor post-confirmation must be in equal monthly amounts, this solution is not consistent with the requirements of the Code.

Moreover, secured creditors must begin receiving payments in equal monthly amounts beginning with the first payment after confirmation. Here again I depart from the view that concludes that Congress intended to permit differential payments by not specifying in § 1325(a)(5)(B)(iii)(I) any date on which payments in equal monthly amounts must begin. <u>See, e.g.</u>, <u>DeSardi</u>, 340 B.R. at 805 ("Nor does the section state that payments must be equal 'as of the effective date of the plan.'"). I reject this conclusion, because it implicitly incorporates the premise that "periodic payments" is a defined term—a premise with which I do not agree.

Second, the rulings in <u>DeSardi</u>, <u>Hill</u>, and <u>Blevins</u> invite litigation from secured creditors who would not receive any amortized payments on their claims until months or even years into the plan. For example, a debtor making a plan payment of $200 a month may take two years or more to pay attorney's fees,

during which time the creditor would receive only minimal adequate protection payments. A secured creditor in this position could be expected to object that post-confirmation adequate protection requires the amortized monthly payment on the claim, not the 1% of collateral value that debtors in this district typically propose for pre-confirmation adequate protection payments.

Finally, this approach necessitates a case-by-case analysis that would impose an undue burden on the Trustee as well as on the resources of the court. I specifically disagree on this point with the DeSardi court, which concluded that a statutory interpretation requiring a case-specific analysis "[would] not render portions of the Code practically unworkable." See 340 B.R. at 806.

I conclude that "periodic payments . . . in equal monthly amounts" as provided by § 1325(a)(5)(B)(iii)(I) refers without distinction to all post-confirmation payments on an allowed secured claim. Further, secured creditors must begin receiving these payments in the Trustee's first disbursement following confirmation.

### III.  The Requirement of Adequate Protection

#### A.  Pre-Confirmation Adequate Protection

Historically, adequate protection in the form of cash payments was just one of the ways that a secured creditor could be protected from the depreciation of its collateral after the filing of the petition and before the confirmation or dismissal of a chapter 13 case.[7] With the BAPCPA amendments to § 1326, Congress has *required* that adequate protection be in the form of cash payments.[8] Section 1326 as amended provides in pertinent part that

> [u]nless the court orders otherwise, the debtor
> shall commence making payments not later than 30
> days after the date of the filing of the plan . . .
> in the amount . . . that provides adequate

---

[7] Section 361 provides a non-exclusive list of three forms of adequate protection for an entity with an interest in property in which the estate has an interest, including:

    (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

    (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

    (3) granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

[8] While acknowledging the apparent congressional intent, at least one court has interpreted the prefatory "[u]nless the court orders otherwise" in § 1326 to permit exceptions to the requirement of cash payments. See In re Singer, 2007 WL 1206728 (Bankr. E.D. Pa, 2007).

> protection directly to a creditor holding an allowed
> secured claim secured by personal property to the
> extent the claim is attributable to the purchase of
> such property by the debtor for that portion of the
> obligation that becomes due after the order for
> relief, reducing the payments under subparagraph (A)
> by the amount so paid . . . .

11 U.S.C. § 1326(a)(1)(C).

Section 1326 is silent about whether these payments may properly include an interest component, although at least one court has concluded that they may not. See Drive Fin. Servs. v. Brown (In re Brown), 348 B.R. 583 (Bankr. N.D. Ga. 2006) (holding that pre-confirmation adequate protection payments compensate for depreciation in collateral and apply only to principal).

The court in Brown reasoned that "[i]ncluding interest as a component of adequate protection for a secured creditor would effect a change in pre-BAPCPA practice. . . . [and] contradicts fundamental bankruptcy principles and law on this subject." Id. at 593. The Brown court noted that under past bankruptcy practice, a secured creditor was adequately protected when the amount of pre-confirmation payments equaled the amount that the collateral was depreciating and that Congress did not

AO 72A
(Rev. 8/82)

indicate any intention to add to this compensation. Id. at 594.

I agree with this analysis, and I likewise conclude that pre-confirmation adequate protection payments may be applied only to principal. Further, the Trustee must take into account this reduction in principal when setting up the post-confirmation amortized monthly payment term. The amount of principal paid as pre-confirmation adequate protection affects only the number of periodic payments to the secured creditor, as the plan already has established the amount of the payment and the applicable rate of interest under Till v. SCS Credit Corp., 541 U.S. 465 (2004).

### B. Post-Confirmation Adequate Protection

Before the passage of BAPCPA, the Code did not explicitly treat the question of post-confirmation adequate protection, although secured creditors at any time could request relief from the automatic stay under § 362 for cause including lack of adequate protection.[9] This strategy was not always

---

[9] "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" 11 U.S.C. § 362(d)(1). Additional assurances of post-confirmation adequate protection are included in § 363 (if property is to be used, sold, or leased) and § 364 (if a lien on property is proposed). Sections 362, 363, and 364 all apply to chapter 13 debtors.

successful, particularly in courts that regarded confirmation as res judicata on the issue of adequate protection. See, e.g., World Omni Fin. Corp. v. Hodges (In re Hodges), 1997 WL33475577 (Bankr. S.D. Ga. 1997).

Moreover, courts pre-BAPCPA had the discretion to interpret post-confirmation adequate protection in light of the circumstances of the case. See, e.g., McGlockling v. Chrysler Fin. Co. (In re McGlockling), 296 B.R. 884 (Bankr. S.D. Ga. 2003) (finding that insurance on collateral, debtor's stable employment, and regular payments at more-than-the-contract-rate of interest provided adequate protection when debtor proposed to take collateral to Germany during military service).

BAPCPA has dramatically changed this landscape. Section 1325(a)(5)(B)(iii)(II) now explicitly requires post-confirmation adequate protection and further specifies that it must be in the form of money.[10] As a result of this new provision, payments to secured creditors under the plan must always at least equal the amount of depreciation of the collateral. Courts disagree about what this requirement means.

---

[10] Section 1325(a)(5)(B)(iii)(II) provides that if "the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan."

AO 72A
(Rev. 8/82)

Some courts have interpreted the post-confirmation adequate protection provision to provide a way to pay debtor's lawyer. As outlined in § II above, these courts have held that pre-confirmation adequate protection payments extend beyond confirmation until attorney's fees are paid in full, at which time the plan payments on an allowed secured claim may begin. See In re Hill, 2007 WL 499622 (Bankr. M.D.N.C. 2007); In re Blevins, 2006 WL 2724153 (Bankr. E.D. Cal. 2006); In re DeSardi, 340 B.R. 790 (Bankr. S.D. Tex. 2006).

These decisions devote much thought to Code exegesis justifying a two-tier post-confirmation payment scheme, but make only perfunctory mention of the requirement of adequate protection during the entire duration of the chapter 13 plan. The DeSardi court noted only that the uniform plan in the Southern District of Texas provides by definition "an amount at least equal to adequate protection." DeSardi, 340 B.R. at 807. The court in Hill paraphrased the statutory language to require that "the equal monthly payments be in an amount sufficient to provide adequate protection" and concluded that "in most instances, the equal monthly payments will be greater than the adequate protection payments." Hill, 2007 WL 499622 at *7. The court in Blevins avoided the issue entirely except to observe that "the

equal monthly payment provision is different from provisions in §
1325 requiring adequate protection to the holder of an allowed
secured claim" and that the creditor did not argue that it lacked
adequate protection. Blevins, 2006 WL 2724153 at *2.

In contrast to these decisions, the Bankruptcy Court
for the Northern District of Texas considered the requirement of
post-confirmation adequate protection apparently without concern
for any effect its ruling might have on payment of attorney's
fees. See In re Bufford, 343 B.R. 827 (Bankr. N.D. Tex. 2006).
The Bufford court held that payment over the life of the plan of
the present value of the claim as of the date of the petition
provided the post-confirmation adequate protection required under
§ 1325(a)(5)(B)(iii)(II). Id. at 839. The Bufford court thus
simply reiterated the present value requirement of the Code
without addressing the issue of collateral depreciation that is
now explicit in § 1325.

The "value vs. debt" aspect of § 1325 was acknowledged
by the Bankruptcy Court for the Eastern District of Louisiana,
which concluded that the post-confirmation adequate protection
requirement was irrelevant unless the payment stream that
preserved the present value of the claim did not also adequately
protect the value of the collateral, as when the collateral

depreciates faster than the debtor's payments can offset. See In re White, 352 B.R. 633, 650 (Bankr. E.D. La. 2006). Otherwise, the plan must provide only that payments on an allowed secured claim equal the present value of the claim under § 1325(a)(5)(B)(ii). Id.

I concur in part with both Bufford and White. Payment over the life of the plan of the present value of the claim as of the date of the petition meets the adequate protection requirement of § 1325(a)(5)(B)(iii)(II), so long as the principal reduction achieved by the equal monthly amount is sufficient to offset any depreciation of the collateral.

## IV. Accrual and Payment of Interest on Allowed Secured Claims

Examination of the incorrect disbursements in this case brought to light at least two errors originating in the computer software that the Trustee uses to track payments and calculate interest on allowed secured claims in all the chapter 13 cases she administers. First, the Trustee apparently calculated interest on allowed secured claims from the date on which the petition was filed instead of the date on which the case was confirmed. Second, the Trustee's disbursements to secured

creditors on the first day of each month included interest that would not accrue until the end of that month.

### A. The Date on Which Interest Begins to Accrue

Confirmation requirements in § 1325 include the payment of interest on allowed secured claims, so that the secured creditor receives the present value of the claim paid over time in the plan.[11] This interest cannot begin to accrue on an allowed secured claim before the plan is confirmed, because the plan itself provides for the rate of interest. Accordingly, interest on allowed secured claims begins to accrue on the date of confirmation. Pre-confirmation, the creditor already receives adequate protection payments to the extent required under § 1326(a)(1)(C).

Here, the Trustee calculated accrued interest on allowed secured claims from the date of filing of the petition. As a result of this error, secured creditors in this case will receive more interest than the amount necessary to preserve the present value of their claims, because they will have received more interest payments than the Plan provides unless disbursement

---

[11] See 11 U.S.C. § 1325(a)(5)(B)(ii), which provides in pertinent part that "the value, as of the effective date of the plan, of property to be distributed under the plan . . . is not less than the allowed amount of such claim."

amounts are adjusted later in the Plan. This result is inconsistent with the requirements of § 1325(a)(5)(B)(ii), and the Trustee must correct her error in this case and all others she administers.

### B. Payment of Interest in Arrears

Under the principle known as the "United States rule," payment on an amortized debt is applied first to interest due and then to the principal. Darr v. Muratore, 8 F.3d 854, 861 & n.9 (1st Cir. 1993) (citing Story v. Livingston, 38 U.S. 359, 371 (1839)). Accord Ga. Code Ann. § 7-4-17 ("When a payment is made upon any debt, it shall be applied first to the discharge of any interest due *at the time*, and the balance, if any, shall be applied to the reduction of the principal." (emphasis added)). Thus monthly payments to secured creditors under a chapter 13 plan may include only the interest that is currently due on the claim.

Here, the Trustee paid interest on allowed secured claims before that interest accrued. The disbursements she made to secured creditors on the first day of each month included interest that would accrue over the course of that month. The

result was a pattern of over-distributions to secured creditors under the terms of the Plan.

Interest on allowed secured claims must be paid in arrears. In the case before me that was confirmed on August 22, 2007, the first disbursement to secured creditors should have been made on September 1, 2007. The amount of that disbursement should have been the prorated equal monthly amount due under the Plan, which would have included interest that accrued only during the nine days between the date of confirmation and the date of the disbursement. Likewise, all subsequent payments in equal monthly amounts to secured creditors in this and all other cases the Trustee administers must include the interest accrued during the previous month, plus the amount due on the principal according to the amortization schedule.

### V. Conclusion

I dismiss the Motion for Contempt against the Trustee, because derived judicial immunity shields her from suit. On issues raised by the Motion, I hold as follows:

1.   Periodic payments in equal monthly amounts to a secured creditor as required under 11 U.S.C. § 1325(a)(5)(B)(iii)(I) must

begin in the first disbursement following confirmation of the debtor's plan.

2. Adequate protection pre-confirmation under 11 U.S.C. § 1326(a)(1)(C) compensates the secured creditor for depreciation of the collateral between the date of the petition and the date of confirmation or dismissal of the case. These adequate protection payments apply to the principal of the allowed secured claim.

3. Adequate protection during the period of the plan under 11 U.S.C. § 1325(a)(5)(B)(iii)(II) is provided by payment in equal monthly amounts to pay in full the allowed secured claim over the life of the plan at an interest rate that provides the creditor the value of the claim as of the date of the filing of the petition, provided that the principal reduction achieved by the equal monthly payment is sufficient to offset any depreciation in the collateral.

4. The interest required to give a secured creditor the present value of its allowed claim begins to accrue on the date the plan is confirmed.

5. In addition to principal, periodic payments in equal monthly amounts to secured creditors may include only interest that has

accrued before the date of the periodic payment and that is due on the date of the periodic payment.

## ORDER

It is therefore ORDERED that the Motion for Contempt against the Trustee is DISMISSED.

It is further ORDERED that the Trustee shall conform the administration of all chapter 13 cases to this MEMORANDUM OPINION.

John S. Dalis
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
This 12th day of June, 2007